[No. 1751.]

## U. G. PERSING, APPELLANT, *v.* RENO STOCK BROKERAGE COMPANY, RESPONDENT.

1. CONSTITUTIONAL LAW—"DUE PROCESS OF LAW." "Due process of law," within Const. art I, sec. 8, declaring that no person shall be deprived of life, liberty or property without due process of law, not only requires that a party shall be properly brought into court, but that he shall have the opportunity in court to establish any facts which, according to the usages of the common law or the provisions of the Constitution, will be a protection to himself or property.

2. ATTACHMENT—CLAIMS BY THIRD PERSONS—LIABILITY OF THIRD PERSONS—STATUTES. Under Comp. Laws, 3225, providing that all persons having in their possession any credits belonging to defendant at the time of service of the writ of attachment shall be, unless delivering the same to the sheriff, liable to the plaintiff. for the amount of such credits or debts until the attachment is discharged, etc., a third person in possession of property attached as property of a defendant is liable to plaintiff for any property or credits of defendant which he may hold after his own rights, if any, are satisfied.

3. EXECUTION—SUPPLEMENTARY PROCEEDINGS—EXAMINATION OF THIRD PERSONS—STATUTES. Plaintiff, having attached property of the defendant in the hands of a pledgee thereof and having obtained a judgment against defendant, cannot apply the attached property to the satisfaction of his judgment by proceeding to have the interest of the pledgee determined under Comp. Laws, 3226, allowing any one in possession of property of defendant to be examined as a witness in relation thereto; but under Comp. Laws, 2705, declaring that possession of mortgaged chattels shall not be taken from the mortgagee without full payment, he must move by direct proceeding against the pledgee, under that part of the civil practice act entitled "Proceedings Supplementary to the Execution," to prevent disposition of the property by the pledgee pending an action to determine the rights in the property.

4. SAME. A plaintiff, obtaining a judgment against a defendant after attaching property in the hands of a third person, may, to convert to the satisfaction of the judgment property in the hands of the third person, proceed under Comp. Laws, 3226, providing that any person having possession of property belonging to defendant may be required to appear before the court and be examined respecting same, etc., where the title to the property is undisputed, and the facts clearly show that it belongs to defendant and that the third person claims no interest therein.

5. COURTS—JURISDICTION—VACATING ORDER VOID AB INITIO. The court has authority of its own motion to vacate an order void *ab initio*, because not within the jurisdiction of the court.

APPEAL from the District Court of the Second Judicial District of the State of Nevada, Washoe County; *John S. Orr*, Judge.

Action by U. G. Persing against the Reno Stock Brokerage Company, in which, after judgment, James T. Boyd was ordered to appear to testify as to property in his possession belonging to defendant. From an order vacating an order adjudging that certain property in the possession of James T. Boyd be delivered to the sheriff, plaintiff appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*Mack & Shoup*, for Appellant:

I. The so-called lien upon said automobile, asserted by James T. Boyd, was invalid because the attempted transfer of the automobile to him by the president and acting cashier of the Reno Stock Brokerage Company, as security for the payment of certain creditors' claims against the company, was without authority and void. It was not shown or claimed that either Mr. Froelich as president of the Reno Stock Brokerage Company, or Mr. O'Brien as acting cashier, had authority from the board of directors of the company to make such transfer. The testimony shows that it was simply an effort on the part of the two officers named, acting under the coercion of Messrs. Boyd and Salisbury, to prefer certain creditors whom Messrs. Boyd and Salisbury represented as attorneys. The transaction was not even dignified by so much as a scrap of paper in writing as an evidence of the *bona fides* of the transfer, or of the terms thereof, and we are forced to rely upon the oral testimony of Mr. Boyd and Mr. Salisbury as to the facts, and even their testimony is vague and uncertain as to the details of their clients' claims and the amounts due them; so that if the trial court had held that their lien upon the automobile was valid, it could not have set forth with any precision or certainty the amounts of the debts secured thereby, under section 3226 of the Compiled Laws of Nevada. It is, however, well settled that the president of a

corporation has no authority to sell, or mortgage, or assign corporate property for the benefit of its creditors, or to secure the payment of a corporate debt (10 Cyc. 906–910). The appointment of a president of a corporation to the office of general manager does not authorize him to enter into a transaction by which the corporation prefers one of its creditors, being in failing circumstances.

II. As the evidence showed and the court found that the automobile was the property of the Reno Stock Brokerage Company, and as the court further found, as it was obliged to do upon the showing made by Mr. Boyd himself, that Mr. Boyd had no valid lien on the property, the only thing left for the court to do was to order the automobile delivered to the sheriff without reference to any liens claimed by Mr. Boyd, as the liens contemplated by the statute are, of course, valid liens, capable of enforcement against the attachment or judgment debtor.

III. The order of the trial court requiring James T. Boyd to deliver said automobile to the sheriff was authorized by section 3226 of the Compiled Laws of Nevada. As we have already endeavored to show, the findings of the trial court upon the hearing of Mr. Boyd's motion to set aside the order requiring him to deliver the automobile to the sheriff were conclusive, and if we are correct in this, it seems to us that the only question the trial court could pass upon, on the hearing of Mr. Boyd's motion, if it had jurisdiction to pass upon the motion at all, was whether or not, upon such findings and the admitted facts, it had the jurisdiction to enter the order complained of. This was the view, as we understand it, taken by the trial court itself, and its order setting aside the former order was based upon the theory that, in making such order, the court exceeded its authority under the law. In other words, if the ruling of the trial court, setting aside its former order, was correct, any person may refuse to deliver up to the sheriff personal property belonging to the attached debtor in such person's possession, although such person may have no lien or claim thereto, and thus force the judgment creditor to another suit to recover possession of the personal property, even though there may be nothing to liti-

gate in the second suit. This would nullify the provisions
of section 3226 of the Compiled Laws, and render them of
no avail to any attachment creditor in any suit. The courts,
however, have not so held. Thus, in *Bivins* v. *Harris*, 8 Nev.
153, this provision of our statute was enforced against the
attachment debtor himself, who was compelled to surrender
to the sheriff personal property consisting of shares of stock,
which he had upon his person. It has been held that the
court, even in the absence of statutory authority, has the
inherent power, when necessary for the protection of plain-
tiff's rights, to compel the garnishee to pay into the court
during the pendency of the proceedings the property or cred-
its in his hands. (*Smith* v. *Gower*, 3 Metc. Ky. 177; *Johann*
v. *Rufner*, 32 Wis. 195; *Orton* v. *Noonan*, 27 Wis. 572.)

IV. That the trial court had jurisdiction to determine
whether the transfer, or assignment under which Mr. Boyd
claimed the automobile, was valid is, it seems to us, plain
under much weight of authority. (Waples on Attachment,
209, *et seq.*; Drake on Attachments, 458, 598; *Peoples Bank*
v. *Smith Bros.*, 65 Am. St. Rep. 620.)

*James T. Boyd* and *A. N. Salisbury*, for Respondent:

I. We think it is unnecessary to notice, in reply, the
appellant's contention that the court had no power to set
aside the void order made, but that Boyd's remedy was either
by motion for a new trial or by appeal to this honorable
court. If the order, as the court subsequently found, was
beyond its power to make, it was certainly the court's duty
to set aside such void order, as no right could follow from
the order made by the court beyond its power, and in the
case of *McDowell* v. *Bell*, 86 Cal. 615, the supreme court of
that state issued its mandatory order, prohibiting the court
from proceeding further in a matter on all-fours with this.
In the case at bar the application to set aside the void order
was taken in lieu of an appeal to this court to issue its writ
of prohibition. Even at the present time Boyd, against
whom the whole proceeding is directed, is not yet a party
to the record, but it appears by the record itself that the sole
respondent in this action is the Reno Stock Brokerage Com-

pany, and Boyd is simply appearing here as the party in interest without being named in the record in any respect.

By the Court, SWEENEY, J.:

On June 29, 1907, U. G. Persing, plaintiff and appellant, brought an action against the Reno Stock Brokerage Company, a corporation, defendant, to recover certain stock belonging to plaintiff, and which had been placed in the hands of the Reno Stock Brokerage Company for the purposes of sale on commission, or for the value of said stock, in case the certificates thereof could not be recovered. Plaintiff alleged in his complaint that defendant had hypothecated certain stock and converted the same to its own use without plaintiff's knowledge or consent; said stock being of the alleged market value of $7,525. Upon filing the complaint a writ of attachment was issued, and thereafter levied. The sheriff's return shows that he attached all personal property in the possession or under the control of one James T. Boyd, belonging to the Reno Stock Brokerage Company, defendant, on the 20th day of June, 1907. On July 6, 1907, the Reno Stock Brokerage Company filed a demurrer to the complaint, which was overruled by the court, and the defendant failed within the time allowed to plead to file its answer, whereupon on the 3d day of August, 1907, default was entered against defendant, and on August 8th the trial court, after hearing the evidence of the plaintiff, entered judgment for plaintiff against the defendant for 1,500 shares of the Rocky Hill Gold Mining Company's stock and a money judgment for $5,495.

On August 30, 1907, Guy V. Shoup, Esq., one of the attorneys for plaintiff, filed his affidavit with the clerk of the court, in effect setting forth: That James T. Boyd had in his possession and under his control an automobile belonging to the Reno Stock Brokerage Company, and prayed that Boyd be required to appear before the district court and be examined with respect to all property then in his possession or under his control belonging to the Reno Stock Brokerage Company, and particularly with respect to the said automobile. The court, upon reading the affidavit filed, made an order requiring said Boyd to appear before the court on Sep-

tember 7, 1907, to testify in accordance with the request in
the affidavit of said Shoup. A. N. Salisbury, Esq., was also
cited. Upon September 11th the matter came on regularly
for hearing before the court, Mr. Boyd appearing personally
in response to the citation, and Mr. Boyd and Mr. Salis-
bury were sworn and testified at the instance of the plaintiff.
The testimony of these gentlemen was to the effect that prior
to the bringing of the suit of *Persing* v. *Reno Stock Broker-
age Company* the automobile in question was delivered to
Boyd as a pledge and security for certain claims which said
Boyd and several of his clients had against the Reno Stock
Brokerage Company. The evidence also disclosed that there
was some question whether or not the automobile belonged
to A. J. Froelich, who was president and general manager of
the Reno Stock Brokerage Company, or was the property of
said company. The evidence disclosed, however, that Boyd
had a claim against Froelich personally, and also against the
Reno Stock Brokerage Company, and that said automobile,
prior to the institution of said suit, was delivered into the
possession of Boyd as a pledge and security for the payment
of the claims against Froelich and said company, at the
request of Froelich, who was the president and general man-
ager of said company, through Mr. O'Brien, the secretary
and cashier of the Reno Stock Brokerage Company, in order
to stay attachment proceedings against said Froelich and said
company, which were threatened to be instituted by said
Boyd and Salisbury, if the claims held by them were not
secured. Plaintiff attempted to get possession of said auto-
mobile from Boyd, but Boyd refused to deliver the same
until his claims against the machine were satisfied.

Upon the conclusion of the evidence given by Messrs. Boyd
and Salisbury in this proceeding, the court made the follow-
ing order: "This being the date set for hearing of the return
on the order heretofore entered by this court, requiring James
T. Boyd, Esq., to appear before this court, and then and there
be examined on oath respecting all property in his possession
and under his control belonging to the defendant, Reno Stock
Brokerage Company, and particularly with reference to a
certain automobile referred to in the affidavit of Guy V.

Shoup, Esq., on file herein, and the said James T. Boyd, Esq., appearing in person, the plaintiff also appearing by his attorneys, Messrs. Mack & Shoup, and James T. Boyd, Esq., and A. N. Salisbury, Esq., having been duly sworn and examined on oath respecting the said automobile, and it appearing to the satisfaction of the court that said James T. Boyd was in possession of said automobile on the 28th day of June, 1907, that said automobile was then in the County of Washoe, State of Nevada, that on said June 28, 1907, while the said James T. Boyd, was in the possession and control of the same, a writ of attachment was duly issued out of the above-entitled action, directed to the sheriff of said County of Washoe commanding him to attach and safely keep all property in said county belonging to the said defendant, Reno Stock Brokerage Company, a corporation, within said county, not exempt from execution, and that a copy of said writ of attachment was duly served upon James T. Boyd on June 28, 1907, and on the same day the said sheriff also, pursuant to instructions from plaintiff's attorneys, served upon said James T. Boyd a notice that all personal property belonging to the said defendant, Reno Stock Brokerage Company, in the possession of James T. Boyd or under his control was attached pursuant to said writ, and requested him to give him memoranda stating the character and description of any personal property belonging to said defendant in the possession of James T. Boyd, as shown by the return of the sheriff on file in this court, and it also appearing from said return that no memoranda or statement was made to said sheriff by said James T. Boyd, and it further appearing by a preponderance of testimony that said automobile was, at the time of the service of said writ of attachment and notice as aforesaid upon said James T. Boyd, the property of said Reno Stock Brokerage Company, and that said James T. Boyd has no valid liens or claims thereon, and that said automobile is still in his possession, and under his control, and the court being fully advised in the premises, it is ordered and adjudged that said automobile be delivered to the sheriff of Washoe County by the said James T. Boyd, to be retained by said sheriff to answer any judgment recovered by plaintiff in the above-

entitled action against the Reno Stock Brokerage Company, and that said automobile be delivered by said James T. Boyd to said sheriff within ten days from the date of this order. Dated this 4th day of October, 1907."

Subsequent to this order James T. Boyd made a motion to vacate this order, and the court, after consideration, very properly granted said motion "being of the opinion that in the order heretofore made in this case, the court exceeded its authority under the law." From this order, vacating and setting aside the former order, plaintiff appeals, urging that the court had ample authority to make the original order, and that, the court having acted, it had no authority on motion of said Boyd to vacate its order made in the first instance.

We do not agree with the appellant in either of his contentions. The trial court clearly exceeded its jurisdiction in making the original order, subsequently vacated and set aside. In the case at bar, at the time Boyd appeared in court to testify regarding any property he may have had in his possession belonging to the Reno Stock Brokerage Company, and asserted his rights in the property in question, judgment had already been entered against said company in favor of Persing, in an action in which said Boyd was not a party, and, as will be observed, has not been to the present moment, except as a witness for the aforesaid purpose. To hold that the lower court in a side proceeding of this character could adjudicate the title to disputed ownership of property, or deprive a person of his property, or destroy any right by way of lien a person may have in property in his possession, or that any lien he may have in the property is invalid or given by persons without authority, upon the mere affidavit of a party, unsupported by any testimony or pleading, would do violence to all legal and constitutional rights affecting property guaranteed to every citizen by every Constitution in the land. Section 8 of the first article of the Constitution of Nevada declares that "no person [shall be] deprived of life, liberty or property without due process of law."

This court, in the case of *Wright* v. *Cradlebaugh*, 3 Nev. 341, in defining "due process of law," said: " 'Due process of law,' not only requires that a party shall be properly

brought into court, but that he shall have the opportunity when in court to establish any fact which, according to the usages of the common law or the provisions of the Constitution, would be a protection to himself or property." Counsel for appellant, having attached the property in the possession of Boyd alleged to have belonged to the Reno Stock Brokerage Company, protected his client in so far as he legally could do, after Boyd's rights, such as they might be when legally determined, had been satisfied. When the property alleged to have belonged to the Reno Stock Brokerage Company in the possession of Boyd was attached, Boyd was thereby rendered liable to plaintiff for any property or credits of said company which he may have held, after his own rights, if any, were satisfied. "All persons having in their possession, or under their control, any credits or other personal property belonging to the defendant, or owing any debts to the defendant at the time of service upon them of a copy of the writ and notice as provided in the last two sections, shall be, unless such property is delivered up or transferred, or such debts be paid to the sheriff, liable to the plaintiff for the amount of such credits, property or debts, until the attachment be discharged or any judgment recovered by him be satisfied." (Comp. Laws, 3225.)

But appellant contends, because the property was attached by the plaintiff and he afterwards secured a judgment against the said company, that under section 3226 of the Compiled Laws all he had to do to acquire possession was to cite Boyd into court, and upon counsel's affidavit that he believed said property belonged to said company, notwithstanding Boyd's claim of prior rights in the property accruing before the attachment, that the court could adjudicate in this side proceeding who owned the property and take the same from the possession of Boyd, and could, without an original direct proceeding in which Boyd was made a party, adjudicate Boyd's rights to the property. In this counsel for appellant are in error. After appellant had secured judgment against the defendant, and discovered prior rights in the property attached, if he believed his client's rights prior and superior to Boyd's and desired to convert the property attached to the

satisfaction of his judgment, he should have proceeded, under the part of the civil practice act entitled "Proceedings Supplementary to the Execution," in a direct proceeding against the party maintaining an adverse right in dispute.

Among other regulations for determining adverse rights of a nature here involved, section 3341 of our Compiled Laws, which is identical with section 720 of the Code of Civil Procedure of California, provides: "If it appears that a person or corporation alleged to have property of the judgment debtor, or indebted to him, claims an interest in the property adverse to him, or denies the debt, the court or judge may authorize, by an order made to that effect, the judgment creditor to institute an action against such person or corporation for the recovery of such interest or debt, and the court or judge may, by order, forbid a transfer or other disposition of such interest or debt until an action can be commenced and prosecuted to judgment. Such order may be modified or vacated by the judge granting the same, or the court in which the action is brought, at any time, upon such terms as may be just." When, in the course of the special proceeding in the lower court, the testimony of the party in possession disclosed adverse claims to the property, and the question of ownership arose to be determined, the trial court's jurisdiction in the proceeding ceased in so far as adjudicating the title to the same, and under section 3341, *supra*, the court should have authorized and directed the judgment creditor to institute suit to determine the matter in a proper action, where the title as an issue and Boyd's rights in the property would be directly involved. (*McDowell v. Bell*, 86 Cal. 615, 25 Pac. 128; Kerr's Cyc. Code Civ. Proc. Cal. p. 1210, sec. 720, and cases cited.)

The title to the property must have been undisputed and clearly shown to have belonged to the Reno Stock Brokerage Company, and that Boyd claimed no interest therein before the court in the proceeding referred to could have taken the property from him. (21 Ency. Pl. & Pr. 2d ed. 158, and cases cited; 2 Wade on Attachments, 414, 415.) Section 2705 of our Compiled Laws, treating of the possession of mortgaged personal property, among other things states: "But

the possession of mortgaged personal property shall not be taken from the mortgagor or mortgagee unless full payment of the mortgagee's demand be first made, which, if done by the attaching or executing creditor of the mortgagor, shall entitle him to hold such personal property and the possession thereof, under his levy for repayment to him of the amount so paid, in addition to his own individual demand.  *  *  *" When the mortgagee is in possession of property, "the remedy of the creditor is by direct action against the fraudulent assignee where good faith of the assignment is in issue." (*Hartman* v. *Olvera*, 51 Cal. 502.)

The lower court, in the first instance, being without jurisdiction to make the order, had authority to set aside and vacate this order which was void *ab initio*.  This the court could do of its own motion, with or without an application to have the order vacated.  (11 Cyc. 701.)

The order appealed from is affirmed.